E. T. STIMSON v. CATHEDRAL MINING AND SMELTING COMPANY et al., Plaintiffs in Error.

**Division One, March 2, 1915.**

1. **ORDER TO PRODUCE DOCUMENTS: Insufficient Record Entry: Non-Compliance: Striking Out Answer: Amendment. Nunc pro Tunc.** Plaintiff's petition to have records in the possession of the defendants produced for inspection was sustained, and the clerk's entry in the record recited simply that the defendants should on or before a certain date produce for the plaintiff's inspection such books and papers bearing on the issues as should be designated by the plaintiff. After the date specified, on the plaintiff's motion, the defendants' answer was stricken out for failure to comply with the order to produce, and judgment was given for the plaintiff, the defendants not appearing. The defendants having taken the case up on a writ of error, the

plaintiff asked for an extension of time in order to have the record entry of the order to produce corrected *nunc pro tunc*, in accordance with alleged minutes in the docket of the trial judge, so that it should specify the books and papers that were ordered to be produced. *Held*, that the cause be remanded, with directions to set aside the judgment and reinstate the answer, since the order entered of record by the clerk was not sufficient to serve as a basis for striking out the answer, and there was no showing that the defendants had knowledge of any memoranda in the trial judge's docket or were ever requested to produce any documents for inspection.

2. JUDGMENT: Record Entry: Presumptions: Judge's Docket. The judgment appearing of record is presumptively the judgment of the court, which is not to be sought, except for purposes of amendment, in the minutes of the judge's docket, and until amendment is made the public can act upon no means of information other than the official records.

3. AMENDMENTS: When Made. Under the Statutes of Missouri (R. S. 1909, secs. 1848 and 1851) amendments of the record are to be made only in furtherance of justice, and on such terms as may be just.

Error to Jasper Circuit Court.—*Hon. D. E. Blair,* Judge.

REVERSED AND REMANDED (*with directions*).

*Boyle & Priest, T. M. Pierce* and *Robert E. Maloney* for plaintiffs in error.

(1)   The order of the court striking the answer of the defendants from the files because of failure to produce certain books and papers for inspection was void and not authorized by law, since it does not appear that the defendants had refused at any time to furnish books and papers "designated by the plaintiff," and because section 1948, R. S. 1909, upon the authority of which such order was made, does not authorize a pleading to be stricken from the files, and furthermore because said statute is unconstitutional and inoperative, since it violates section 30 of article 2 of the Constitution of Missouri, which forbids any

person to be deprived of property without due process of law, and also violates section 1 of article 14 of the Amendments to the Constitution of the United States, which guarantees that property shall not be taken without due process of law. Hovey v. Elliott, 167 U. S. 409, 42 L. Ed. 215. (2) No time should be granted for obtaining *nunc pro tunc* amendment. Nisdenberger v. Campbell, 11 Mo. 362; Rohrer v. Oder, 124 Mo. 33; Arendondo v. Arendondo, 133 U. S. 377.

*McReynolds & Halliburton* for defendant in error.

(1) The action of the court in striking out the answer of the defendants Cathedral Mining Company, G. W. Hoadley, Edward K. Hill, and Harry W. Blair is authorized by the statute. Sec. 1947, R. S. 1909. (2) Conceding for the purpose of argument that the order made by the circuit court is insufficient and violates some right of the plaintiffs in error, there is sufficient in the record and files of the court to authorize an entry *nunc pro tunc,* that is to say, the motion filed by the defendant in error specifically sets forth the books, papers and documents required by the plaintiff in the case below, and the judge's docket shows that the motion filed was sustained, and time set for compliance with the order of the court. Sections 1851 and 1865, R. S. 1909, are sufficient to authorize such *nunc pro tunc* entries, and it was expressly decided in Harlan v. Moore, 132 Mo. 491, that the court had power to amend pending appeal. This court has heretofore made orders granting leave to a party to apply *nisi* for a *nunc pro tunc* order. Adams v. Gossom, 228 Mo. 571. In fact, has made an order on the trial court if it could from competent evidence make an amendment of the record so that the case could be heard on its merits in this court. Ross v. Railroad, 141 Mo. 393; Gamble v. Daugherty, 71 Mo. 601; Crawford v. Railroad, 171 Mo. 75.

RAILEY, C.—Plaintiff sued defendants in division two of the Jasper Circuit Court, on January 11, 1910. The purpose of said action was to obtain a judgment against the Cathedral Mining and Smelting Company, on bonds amounting to $10,000, with interest on certain bonds executed by said mining company and secured by a deed of trust on certain property, and to foreclose the equity of redemption of said company, Edward K. Hill, Howard Gray, Empire Trust Company, and Harry W. Blair, and to order said property sold. The petition alleges that plaintiff is informed that Edward K. Hill, George W. Hoadley, A. H. Hoadley, E. J. Bennett, G. S. Graham, F. F. Carpenter, P. Reimer, A. E. Oldham, V. Dart, and P. McKenna are claiming to be holders and owners of part of said series of bonds.

It is charged in the petition that if any of said parties hold any of said bonds, they obtained possession of same without paying any consideration therefor; that no interest had ever been paid on any of said bonds; that said Cathedral Mining and Smelting Company was insolvent at time of trial, and had been insolvent for more than two years prior thereto; that said smelting company for two years or more prior to the date of trial had not attempted to do any business, had not elected any officers or kept any office open, and had abandoned its property and business. The prayer asks for general relief.

All of the defendants appeared. The mining company and defendant Blair first filed a demurrer to said petition and afterwards withdrew the same. On October 1, 1910, all of the defendants filed a joint answer, which was signed by Perkins and Blair, and H. W. Currey, attorney for defendants. Said answer denied the alleged equities of plaintiff, and averred that the bonds were acquired by the holders in good faith and for a valuable consideration. It is alleged in the answer that the mortgage referred to in petition could not be

264Mo13

foreclosed, because the holders of three-fourths of the amount of the oustanding unpaid bonds and coupons had not requested the trustees to foreclose, as provided in said deed of trust. The answer further alleged that plaintiff had made no demand upon the trustees for a foreclosure, and that three-fourths of the holders of said bonds in amount had not agreed to the foreclosure of said mortgage; that plaintiff could not maintain his suit until such conditions of the deed of trust had been met.

On November 22, 1910, plaintiff filed a petition for an order requiring defendants to produce certain papers to be inspected and copied, as follows:

"(1) The articles of association of the Cathedral Mining Compay. (2) The books of the Cathedral Mining Company showing the proceedings of the stockholders of said company and of the directors of said company. (3) The stock book of the Cathedral Mining Company, showing the issue of stock, to whom issued and who the present stockholders are. (4) The record showing the sale of bonds of said company, to whom sold and payments received therefor. (5) The books and records of the Chapel Mining Company, showing the minutes of the proceedings of the board of directors and of the stockholders of said Chapel Mining Company. (6) The stock book of said Chapel Mining Company, showing who were the stockholders of said Chapel Mining Company. (7) The articles of association of the Mission Mining Company, together with the records showing who were the stockholders in the Mission Mining Company, and showing the proceedings of the board of directors and of the stockholders of said Mission Mining Company. (8) The articles of association of the Vestry Mining Company and the records showing who were the stockholders of the Vestry Mining Company. (9) The records showing the proceedings of the board of directors and the stockholders of the Vestry Mining Company.

"Plaintiff shows to the court that the Cathedral Mining Company, the Mission Mining Company and the Vestry Mining Company were corporations organized outside of this State, and that their offices and their records were all kept outside of this State, and that the said George W. Hoadley, Edward K. Hill, and possibly some of the other defendants herein, were stockholders and managers of said companies.

"Plaintiff says that to prepare his case properly for trial and that justice may be done between the parties herein, it is absolutely necessary that the plaintiff, prior to announcing ready for trial, should have a chance to inspect said records, make copies of such as may be necessary, and that they should be where they can be used as evidence in the trial of this cause."

This petition was verified by one of plaintiff's counsel.

On November 26, 1910, the following record entry appears, in respect to said petition:

"Now comes on for hearing plaintiff's petition requiring defendants to produce certain books and papers for plaintiff's inspection, heretofore filed herein; said petition is taken up, and being seen, heard and fully understood by the court, the same is sustained.

"It is therefore ordered by the court that said defendants be, and they are hereby required to produce, for plaintiff's inspection, on or before the second day of January, 1911, such books and papers bearing upon the issues in this cause as shall be designated by the plaintiff."

On February 20, 1911, plaintiff filed a motion to strike out the answer of said defendants, as follows:

"Now comes the plaintiff and moves the court to strike out the answer of the Cathedral Mining Company, G. W. Hoadley, Edward K. Hill and Harry W. Blair, defendants herein, for the following reasons, to-wit:  Because this court at its last term, to-wit, the November term, 1910, *made an order of record in*

*this cause,* after due notice to said defendants, requiring them to produce for the inspection of the plaintiff in preparing his case for trial, certain books and papers in the possession and under the control of said defendants, on or before the 2nd day of January, 1911, and the defendants have wholly neglected, failed and refused to produce said books and papers, or any part thereof, by reason of which their answer should be stricken from the files in this cause.''

On February 25, 1911, the following record entry appears:

''Now, at this day, the motion heretofore filed by the plaintiff to strike out the answer of defendants, Cathedral Mining & Smelting Company, G. W. Hoadley, Edward K. Hill, and Harry W. Blair, comes on for hearing. Plaintiff appears by his attorneys, McReynolds & Halliburton, and the defendants appear not in person, and their attorney of record, although duly served with a copy of said motion, appears not; and it appearing to the court that said motion was filed in this court on the first day of this term and was regularly set for hearing today, and that said defendants' attorney of record had notice of such setting and was in court in person this day, and his attention called to said motion and its pendency for hearing, and plaintiff's attorneys demanding a hearing on said motion, all and singular the matters therein are submitted to the court; and the court after hearing the evidence and examining the files and records in this cause, doth find that at the November term, 1910, of this court, on petition and application of plaintiff, and after notice to the defendants and their appearance to said petition and application by their attorney of record, *the court made an order of record requiring* said defendants to produce for the inspection of plaintiff in preparing his case for trial certain books and papers described in said order in the possession and under the control of the said defendants on or before January 2, 1911, and it further ap-

pearing to the court *that defendants have wholly failed to comply with said order in any respect, and have failed and refused to offer any reason or excuse for failing to comply with said order of this court*:

"It is ordered and adjudged by the court that the answer of the defendants, Cathedral Mining & Smelting Company, G. W. Hoadley, Edward K. Hill and Harry W. Blair, be and is stricken out and from the files in this cause. And it is further ordered and adjudged by the court that the allegations of the plaintiff's petition be taken as confessed by said defendants, and that the costs of this motion and said application be taxed to said defendants."

The record entry, as written by the clerk, sustaining plaintiff's petition for the production of certain papers, etc., was a part of the proceedings of the November term, 1910, of said court. Plaintiff's motion to strike out the answer of defendants was filed at the February term, 1911, of said court, and said motion was sustained during the same term. On the 6th of June, 1911, and during the June term of said court, the above cause was reached for trial, and the court, after hearing plaintiff's evidence, etc., found the issues in favor of plaintiff.

"And the court further finds that the defendant Cathedral Mining & Smelting Company is indebted to the plaintiff on account of the debt in said deed of trust described in the sum of twelve thousand eight hundred ninety-seven and 50-100 dollars ($12,897.50).

"It is therefore ordered and adjudged that the equity of redemption of the defendants in said premises and property be foreclosed, and that plaintiff recover of said defendant Cathedral Mining & Smelting Company the said sum of $12,897.50, the debt aforesaid found to be due, together with his costs to be levied on the real and personal property above described. And it is further adjudged that if the said mortgaged property be not sufficient to satisfy said debt and costs, the

residue of said debt and costs be levied on the other goods and chattels, lands and tenements of said defendant Cathedral Mining & Smelting Company.''

Upon the 5th of December, 1911, the writ of error was sued out of this court to division two of the Jasper Circuit Court, directing that the record and proceedings in the above cause in said court be certified here for review. A full and complete transcript of the proceedings had in the said circuit court has been filed here, and plaintiffs in error are seeking to have the *order* of said circuit court striking out their answer, and the judgment rendered in said cause, set aside and for naught held.

Plaintiff filed application during the present term of this court, asking for an extension of time, in order that he might have the record of the circuit court corrected by *nunc pro tunc* entry, so as to show what he claims to have been the order made by said circuit court upon defendants herein, relating to the production of books, papers, etc. The case therefore stands for review here upon the application of plaintiff for time to correct the record aforesaid, and upon the contention of defendants that on the record the trial court erred in sustaining plaintiff's motion to strike out the answer of defendants, and in entering judgment in behalf of plaintiff after said answer was stricken out.

I. We are requested by defendant in error to grant him an extension of time, in order that he may present to the trial court a motion to correct the record entry made by the clerk of said court in respect to an order upon defendants to produce certain books and papers. Leaving out of consideration, for the present, the *terms* upon which it may be done, we are disposed to treat the petition of plaintiff, filed in the court below for the production of books and papers, as sufficient in form and substance to authorize the court to sustain the same. It may be conceded for the purposes of the

case that the entry made by the trial judge upon his docket, taken in connection with the above petition for the production of papers, would furnish sufficient data upon which a *nunc pro tunc* entry might be made, so as to have the record entry of the clerk upon this subject corrected and made to conform to the order of the court calling for the production of such books, papers, etc., which were specified in said petition.

II.   It may likewise be conceded for the purposes of the present controversy that if the *entry* made by the clerk *upon* the *record* of said court had fully described the different documents, books, papers, etc., specified in said petition, and had *recited* in said *entry* that said defendants were required by the court to produce the same for the inspection, etc., of plaintiff and his counsel, at the time and place designated, then an intentional and wilful refusal of said defendants, upon being served with a copy of such order, to comply with same, would furnish a sufficient basis for striking out the answer.

III.   It may be also conceded, in the disposition of the above question, that the record shows that defendants' counsel was present at the hearing of said petition for the production of books, papers, etc., and that said attorney heard the court announce that said petition would be sustained, etc.

Order to
Produce
Documents:
Insufficient
Record Entry:
Non-compliance:
Striking Out
Answer:
Amendment.

IV.   The record entry of said court as actually written by the clerk, without caption, reads as follows:

"Now comes on for hearing plaintiff's petition requiring defendants to produce certain books and papers for plaintiff's inspection, heretofore filed herein; said petition is taken up, and being seen, heard and fully understood by the court, the same is sus-

tained. It is therefore ordered by the court that said defendants be, and they are hereby required to produce, for plaintiff's inspection, on or before the second day of January, 1911, such books and papers bearing upon the issues in this cause as shall be designated by the plaintiff.''

There is nothing in the record before us to indicate that counsel for defendants ever saw or read the memoranda made by the trial judge upon his docket, in reference to the production of books, papers, etc., in said cause. There is nothing to indicate that any *particular* place was specified for the production of said documents, nor is there before us any evidence tending to show that said order, as made by the clerk, was ever *served* upon any of said defendants, or that any of the latter were *requested,* after the sustaining of said petition, to produce said documents, or any of them, for the inspection of plaintiff or his counsel.

The above order is entirely too broad and indefinite in its terms. It gave the plaintiff a roving commission to call for any books or papers which he might consider as bearing upon the case, *whether called for in the above petition or not.* The law requires the *petition to specify the documents called for,* and the *record entry,* sustaining a motion of this character, *should set out with particularity the same documents described in the petition, if the latter is sustained.* In view of the foregoing, we have no hesitation in reaching the conclusion that the record entry, as made by the clerk, was wholly insufficient to be used as a basis upon which to predicate an order for the striking out of the answer of said defendants.

In plaintiff's application for a continuance of the case, we find the following: ''That J. W. Halliburton, attorney for defendant in error, plaintiff in the trial court, *relied upon said clerk in making such records as above.* That said J. W. Halliburton has had sole charge of this case on behalf of defendant in error,

plaintiff below, and *did not know or learn of the entry so made by said clerk not being in conformity to the order of the court, until the record of plaintiff in error was served upon him as attorney of record for defendant in error, which was about the 12th of December, 1914."*

In the absence of any evidence to the contrary, it is fair to *assume* that the *defendants,* whose answer was stricken out at the instance of plaintiff, *likewise "relied upon said clerk in making such records as above."* In other words, if the able counsel of plaintiff, whose duty it was to see that a proper order was made before an answer could be stricken out, had the right to rely upon the clerk in the performance of his duty, we are at a loss to know why counsel for the defendants were not justified in indulging the same reliance. It is made the duty of the circuit clerk, by the laws of this State, to enter upon the record the judgment and proceedings of the circuit court. These records, when thus written, are said to impart absolute verity. Counsel for defendants, when confronted with the entry made by the clerk in this case, were required to determine at their peril whether the order as made was sufficient to justify the trial court in striking out the answer for failure to comply with same. If, however, the entry as made was not sufficient to warrant the court in striking out the defendants' answer, then the latter were not guilty of contempt for failing to comply with a void order.

Section 3851, Revised Statutes 1909, provides that: "Full entries of the orders and proceedings of all courts of record of each day shall be read in open court on the morning of the succeeding day, except on the last day of the term, when the minutes shall be read and signed by the judge at the rising of the court."

Section 3859 of the same statutes provides that: "It shall be the special duty of every judge of a court of record to examine into and superintend the manner

in which the rolls and records of the court are made up and kept; . . . to require . . . that the duties of the clerks be performed according to law.''

Section 2685, Revised Statutes 1909, provides, that: ''Every clerk shall record the judgments, rules, orders and other proceedings of the court, and make a complete alphabetical index thereto.''

With the foregoing duty devolving, by operation of law, upon the trial judge and the clerk of his court, were not the defendants justified in assuming, as did the plaintiff, that the clerk had written the record entry, under consideration here, in accordance with the directions of the court? Defendants, although served with a copy of plaintiff's motion to strike out their answer, failed to appear at the hearing of said motion by counsel or otherwise. Counsel for plaintiff must have been very strongly impressed with the idea, while trying this motion to strike out the answer, that the clerk had properly performed his duty, for there is nothing in the record to indicate that upon the hearing of said motion the clerk's record entry under consideration was ever read to the court as evidence in support of the motion to strike out said answer. On the contrary, we are justified in assuming that neither counsel for the plaintiff, nor the trial judge, upon the hearing of said motion, *read* or *saw* said record entry made by the clerk. This must be true, as plaintiff's counsel never discovered the mistake, as shown in the above quotation, until December 12, 1914, when the abstract of record in this cause was served upon him. The motion of plaintiff to strike out the answer of defendants was therefore based solely upon a void order, made and entered of record by the clerk, as demonstrated from the foregoing facts. This stands to reason, as plaintiff's counsel *relied upon* the correctness of the *clerk's entry,* and hence could not have intended to predicate an order striking out the answer upon the *minutes made by the trial judge upon his docket,* which

were never entered upon the court record required by law to be kept by the clerk.

In this view of the question, it clearly appears that defendants were never charged with having violated *the minutes made by the trial judge in his docket,* nor does it appear, from the record, that defendants' counsel had any *actual* knowledge that any such entries were on said docket. As a matter of fact, the defendants were proceeded against under a void order, and their answer stricken from the files under and pursuant to such order. In our opinion, it would be a travesty upon the law to now allow the record entry to be corrected in accordance with the memoranda on the docket of the court, without restoring the defendants to the same position which they occupied before said answer was stricken out.

While section 1947, Revised Statutes 1909, on which plaintiff relied in having the trial court strike out said answer, has been upon our statutes for more than a half century, we have been unable to find a case where a pleading has been stricken out under such circumstances as those disclosed by the record in this cause. The statute affords a harsh remedy, and should only be applied when the parties complained of have been guilty of a *wilful or intentional* refusal to comply with a valid order made by the court.

V. We are not authorized to inquire into the truth or falsity of the matters pleaded in the answer of defendants, but if the facts pleaded

**Judgment:**
**Record Entry:**
**Presumptions:**
**Judge's Docket.**

therein be taken as true, they present an insurmountable difficulty in the way of recovery upon the part of plaintiff. In other words, if the facts as disclosed by the answer be taken as true, the plaintiff was not entitled to a decree in the cause. It would therefore be a great injustice to affirm the action of the lower court, in cutting off the defendants in their right to assert the

defenses which they have exhibited in their answer, when the motion to strike out has been based upon a void order of said court. In the absence of evidence tending to show actual knowledge upon the part of defendants or their attorneys, as to the alleged entry upon the judge's docket, it cannot be presumed that they were guilty of wrongdoing. On the contrary, "in all cases, . . . the judgment appearing of record is *presumptively* the judgment of the court." [Atkinson v. Railroad, 81 Mo. 1. c. 54; Belkin v. Rhodes, 76 Mo. 643; Missouri, Kansas & Eastern R. R. Co. v. Holschlag, 144 Mo. l. c. 256-7; Glover v. Ins. Co., 130 Mo. 173; McCormick v. Wheeler, Mellick & Co., 36 Ill. l. c. 120.]

We are strongly impressed with the clear and forceful language used by Mr. Justice LAWRENCE, in the McCormick case, supra, at page 120, where he was discussing *nunc pro tunc* entries, and said:

"For what is the judgment of a court? It does not reside, unspoken and unwritten, in the breast of the judge. It is not to be sought in the minutes or memoranda which the judge makes upon his own docket, and which the law does not require him to make, but which are merely kept by him for his own convenience, and to enable him to see that the clerk accurately makes up the record. These minutes, it is true, are a proper means of amending a record, but until the amendment is made, the public can act upon no other means of information than the official records of the court, as kept by an officer appointed by the law for that purpose. How often have this and other courts expressed the maxim, that 'a record imports absolute verity?'"

The language just quoted covers the situation in this State. As heretofore shown, it is the absolute duty of the clerk to make his record properly recite the judgment and proceedings of the court, which are required to be entered of record. We are not aware of any law in this jurisdiction which directs the trial

judge to keep a record of the proceedings in his court. The entries made by him are entered on his docket for the purpose of keeping a check upon the clerk, and for the purpose of enabling him to amend the record in case of oversight or mistake on the part of the clerk. As long as the record entry made by the clerk remains unamended, it will be presumed to properly recite the judgment or proceedings of the court, and a defendant cannot be legally declared in contempt for failure to comply with the memoranda made by the trial judge, when he has been proceeded against and his answer stricken out for the failure to comply with a nonenforceable order entered by the clerk.

The case of Atkinson v. Railroad, 81 Mo. 52, and following, is strongly illustrative of the foregoing contention. Defendant had appealed from a judgment by default in the justice's court, and its counsel did not desire to enter the appearance of said railroad company in the circuit court. After the case reached the circuit court, a continuance of the cause was had, and thereafter, when the defendant filed special motion to dismiss the cause for want of jurisdiction, defendant's counsel was confronted with the record entry made by the clerk, showing that the cause at the preceding term had been continued by *consent*. Counsel for the company thereupon withdrew its motion to dismiss, and asked the court to enter a *nunc pro tunc* order correcting the record entry made by the clerk. The *minutes* kept by the *clerk* and the *minutes* made by the *trial judge* on his docket *both plainly recited that the cause was continued on the application and at the cost of plaintiff, but neither the minutes of the clerk nor the docket of the trial judge said anything about the continuance being had by consent.* The railway company attempted to show by affidavit that no consent was obtained and that the railway company was not represented in court. An appeal was taken and the case brought to this court. Commissioner EWING, in behalf

of the court, held, that, as the entry made by the clerk was not in conflict with either the *minutes* formerly made by the *clerk* or the *docket entry* of the *judge,* it could not be overturned after the lapse of the term.

The Atkinson case, supra, presents a forceful illustration of the length to which this court has gone in upholding the record entries made by a clerk of a court of record. As heretofore suggested, the defendants and their counsel were justified in ignoring the order made and entered of record by the clerk, and hence the answer of said defendant was improperly stricken out by the trial court.

VI. Where injustice would be done, the court should not authorize an amendment of the record, un-
**Amendments: When Made.** less the defendants were restored to the position which they occupied at the time their answer was stricken out. Section 1848, Revised Statutes 1909, provides that, ''The court may, at any time before final judgment, in *furtherance of justice,* and on such terms as may be proper, amend any record, pleading, process, entry, etc., . . .'' Section 1851, Revised Statutes 1909, also provides that, ''After final judgment rendered in any cause, the court may, in *furtherance of justice,* and on such terms as may be *just,* amend in affirmance of such judgment any record, pleading, process, entries, . . .''

It will be observed that our statutes relating to amendments proceed on the theory that no *injustice* shall be done under such circumstances as those disclosed by the record here. To the same effect are the following cases: Neidenberger v. Campbell, 11 Mo. l. c. 362; Rohrer v. Oder, 124 Mo. l. c. 32-3; Glover v. Ins. Co., 130 Mo. 173; Cuebas v. Cuebas, 223 U. S. l. c. 389.

In the Neidenberger case, supra, Judge NAPTON, in discussing this question, said: ''That an amendment would have been proper under ordinary circumstances,

may be conceded; but the court refused to permit the judgment by default to be set aside, either at the instance of the defendant, who was a mere tenant, or of the landlord, who desired to defend the action and had not been notified of its pendency, prior to the judgment by default. *Amendments are to be allowed for the furtherance of justice.* Where one party has taken a false step and seeks to retrace it, he should not be allowed to do so, unless his adversary, who has been guilty of a similar laches, be allowed the same privilege . . . We think the amendment allowed by the court should not have been permitted, unless the defendant had also been allowed to set aside the judgment by default, and have the case tried on its merits.''

In the case before us, counsel for plaintiff implicitly relied upon the record made by the clerk, and went to the extent of having the court strike out the answer of defendant, based on the void order thus made by the clerk. *The plaintiff, through his counsel, now seeks to have the record made by the clerk corrected, so as to convict the defendants of having violated an order which was not upon the record at the time their answer was stricken out.*

In the Glover case, supra, the trial court made an order striking out the defendant's demurrer and denying to it a further defense, for the alleged reason that it was in contempt for not complying with the order of the court to produce written instruments for inspection. This court reversed the dicision of Judge Valliant in the court below, and held that in the absence of any evidence upon the subject, the law would presume that defendant was actuated by proper motives in making its return to the order of the court in regard to the production of the documents called for. The trial court, in the case just cited, indulged in caustic criticism of the action of the defendant in its return, and intimated that it was trifling with the court. Judge GANTT, in behalf of this court, reached a different conclusion,

and reversed the cause on account of the striking out of defendant's demurrer to plaintiff's petition.

In the case of Cuebas v. Cuebas, 223 U. S. 389, Mr. Justice LURTON said: ''That the bill was subsequently amended so as to confer jurisdiction against Cuebas as sole defendant, by dismissing the bill against the other two defendants and striking out the prayer of the bill that any and every claim, interest, or incumbrance be forever barred and cut off, did not justify a decree based upon the order *pro confesso* made prior thereto. *Upon such amendment being made, so completely changing the character of the bill,* creating a jurisdiction which had not theretofore existed, the court should have set aside the default and given time to defend.''

We have carefully considered all the questions involved herein, and deem it our plain duty to reverse and remand this cause with directions to the lower court to set aside the order striking out defendants' answer; to set aside the judgment entered in said cause; and to restore defendants to the same position which they occupied in said court at the time of the filing of plaintiff's motion to strike out said answer. *Brown, C.,* concurs.

## PER CURIAM:

The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All the judges concurs.